## DEERE, WELLS & CO. v. BAGLEY.

1. **Venue:** CHANGE OF: AFFIDAVITS. Under section 2590 of the Code, requiring that an application for a change of venue in a civil case, on the ground of prejudice on the part of the people of the county, or of the undue influence of the attorney of the adverse party, be supported by affidavit verified by the applicant and three disinterested persons, does not require that the affidavits of the disinterested persons be identical with that of the applicant, or that they subscribe the same paper. It is sufficient if the affidavit of the applicant be fully corroborated as to the grounds of the application by three persons having the statutory qualifications.

Deere, Wells & Co. v. Bagley.

2. ———— : ————: PREJUDICE OF PEOPLE : INFLUENCE OF ATTORNEY : EVIDENCE. Defendant was granted a change of venue from the county on the ground of the prejudice of the people, and the undue influence of one of plaintiffs' attorneys over the people of the county. The affidavits for and against the application were conflicting, and, as to the attorney, it appeared that he had great popularity in the county as an able attorney, and that he had recently received an unprecedented vote in that county for a political office. *Held* that the court did not abuse its discretion in granting the change.

3. **Agency:** ADMISSIONS OF AGENT. In an attachment case, where defendant sought by way of counter-claim to recover for the wrongful levy of the attachment, admissions made by plaintiffs' agent after the levy were not competent to show plaintiffs' motive in suing out the writ, where it was not shown that the admissions were within the scope of the agent's authority.

4. **Evidence:** UNCERTAIN TENDENCY OF: EXCLUSION. Where the record fails to disclose what the excluded testimony would tend to prove, it cannot be said that there was error in excluding it.

5. **Attachment:** FRAUDULENT DISPOSITION OF PROPERTY : COUNTER-CLAIM : EVIDENCE. In an attachment suit based on the alleged intention of defendant to dispose of his property to defraud his creditors, where defendant, by counter-claim, alleged that the attachment was wrongful, *held* that he could not show an absence of fraudulent intent on his part by evidence of secret instructions given to his employes alone.

6. **The Same:** AMOUNT OF PROPERTY ATTACHED. In such case it appeared that, at the same time the attachment in question was levied, another attachment was levied at the suit of plaintiffs against the same defendant in another state, and that a few days thereafter, in still another suit by same plaintiffs against defendant and one G., in such other state, another attachment was levied on the land of G. *Held* that evidence as to the value of that land was properly excluded in this case, when offered to show that the attachment herein was maliciously sued out,—there being no disclosed purpose to show that more property was levied upon than the writ warranted, or that plaintiffs directed on what property the writs should be levied.

7. **Evidence:** PRACTICE : CONTRADICTING ONE'S OWN WITNESS. Where defendant, upon the cross-examination of plaintiff's witness, elicits testimony on a new point, he makes the witness his own, and he cannot be allowed to contradict him on that point.

8. ————: CONTENTS OF BOOKS: PAROL. It is incompetent to prove the rating of a party in the books of a commercial agency by the testimony of an agent of the agency,—the books themselves being the best evidence.

9. **Attachment:** WRONGFUL SUING OUT: EVIDENCE. Upon a counter-claim in attachment for the wrongful suing out of the writ, it was proper, in rebutting defendant's claims, and evidence, to show facts which, though unknown to plaintiffs at the time, tended to show that the averments made as grounds for the writ were in fact true, and also to show such facts and circumstances within the knowledge of plaintiffs as gave them reason to believe that such averments were true. It is not necessary that the information upon which the writ is sued out be true, nor that it be competent evidence in court, but only that the plaintiffs act in good faith and with reasonable care.

10. **The Same.** The fact that a writ of attachment is not sued out until three days after the petition therefor is verified indicates nothing against the good faith of plaintiffs.

*Appeal from Mills District Court.*—HON. C. F. LOOFBOUROW, Judge.

FILED, MAY 21, 1890.

ACTION aided by attachment to recover the amount of certain promissory notes and accounts. Defendant seeks to recover, by way of counter-claim, for the alleged wrongful suing out of the writ of attachment. There was a trial by a jury, and a verdict and judgment for plaintiffs. The defendant appeals.

*Lothrop & Ingeverson* and *John Y. Stone,* for appellant.

*Harl & McCabe,* for appellee.

ROBINSON, J.—At the time this action was commenced the defendant was the owner of a general stock of merchandise which he was selling at retail at Tabor, Iowa. He was also a dealer in agricultural implements at the same place, and bought and sold horses and cattle. He was also the owner of an agricultural implement establishment at Coleridge, Nebraska, and owned real estate and stock in that state. This action was commenced on the seventeenth day of July, 1886. The writ of attachment was sued out on the

ground that. defendant was "about to dispose of his property with intent to defraud his creditors," and was served on the day the action was commenced by levying it upon the stocks of general merchandise and agricultural implements of defendant, and upon horses, mules, notes and other personal property. On the sixteenth day of July, 1886, plaintiffs commenced an action against defendant in the district court of Cedar county, Nebraska, which was also aided by attachment. The action was founded upon substantially the same claims as those involved in this action. The writ was levied upon a considerable amount of real and personal property at nine o'clock p. m., of the seventeenth day of July. At the hour named the Iowa sheriff received the writ issued in this action, and made his levy thereunder two and a half hours later. On the twenty-first day of July, 1886, plaintiffs commenced an action in the district court of Cedar county, Nebraska, against this defendant and one Goodrich, as partners under the name of Goodrich & Bagley, to recover a part of the indebtedness involved in this suit. That action was also aided by attachment, which was levied upon a quarter section of land on the twenty-second day of July. The claims of plaintiffs, as stated in the petition, amount to $7,614.18. They were not due when this action was commenced, but are admitted to be correct. The counter-claims of defendant amount to twenty-three thousand dollars. He alleges that the writ of attachment was sued out wrongfully and maliciously. The jury returned a verdict against the defendant on his own claim for damages, and found specially that the writ was not sued out maliciously nor wrongfully. Judgment was rendered in harmony with the verdict.

I. A motion of plaintiffs for a change of the place of trial from Fremont county was sustained. To

1. VENUE: change of: affidavits.

procure the change plaintiffs filed the affidavit of one of their number, Lucius Wells, which alleges, in effect, that the inhabitants of Fremont county are so prejudiced against plaintiffs,

Deere, Wells & Co. v. Bagley.

and that one of the attorneys for defendant who was named has such an undue influence over the inhabitants of said county, that plaintiffs cannot have a fair trial therein. An affidavit of three disinterested citizens of Fremont county was also filed. It recited that such affiants had heard read the affidavit of Lucius Wells, and that the statements thereof were true. It then repeated substantially the averments of the Wells affidavit. Appellant contends that the statute requires that one affidavit be verified by the principal and three disinterested persons, and that it is not sufficient to file one affidavit of the principal and another of the disinterested persons. In a case of this kind, the motion for a change must be supported in the first instance by the filing by the applicant of "an affidavit verified by himself and three disinterested persons," etc. Code, see. 2590, subdiv. 3. But, in our opinion, it is not necessary that the affidavits of the three disinterested persons be identical with that of the principal. That it must be the same in substance and effect as to the statements required by the statute is true, but the substantial and material requirement is that the affidavit of the party who files the application be fully corroborated as to the grounds of the application by three persons having the statutory qualifications. Whether the required proof is made by a single writing verified by the party and the three persons specified, or by two or more writings, is wholly immaterial.

II. The statements of plaintiffs' affidavit for a change of the place of trial were supported by numerous affidavits, and controverted by numerous counter-affidavits. Appellant contends that the court abused its discretion in granting the change. As to the alleged prejudice of the inhabitants of Fremont county, the most that can be said is that there is a conflict in the affidavits, and that the court might properly have overruled the motion as to that ground. The affidavits of the defendant, in regard to the alleged influence of his attorney,

2. ——:——: prejudice of people: influence of attorney: evidence.

virtually admit the claims of plaintiffs in regard to it.
It is shown that he had recently received "an unprec-
edented vote" in Fremont county for a political
office, and had much influence in consequence. The
appellant claims that the usual vote was merely the
natural expression of the electors in regard to matters
in which they were interested, and that it does not
indicate that the person who received it had undue
influence, and that the influence of the attorney was
due to his reputation as an able lawyer. It is a matter
of common knowledge that undue influence over the
inhabitants of a county may be acquired by a person
whose public and private life are above reproach. The
methods by which the influence is acquired need not be
improper, although the influence may be without
sufficient cause. The material inquiry is whether the
attorney has in fact such an undue influence over
the inhabitants of the county that the applicant for
a change of place of trial cannot obtain a fair trial
therein. It seems to us quite probable, from the record
before us, that the attorney in question had acquired
such an influence over the inhabitants of Fremont
county as warranted the granting of the desired change.
The large vote he had but recently received indicated a
popularity and a personal following which would have
been likely to be felt on the trial. His high standing
as an attorney would have contributed to his influence.
On the whole, we are satisfied that the appellant has
wholly failed to show any abuse of the sound discretion
which the district court was required to exercise in
ruling upon the application for a change of place of
trial.

III. The evidence shows that one Purcell was the
agent of plaintiffs in visiting and settling with their
customers. Appellant complains of certain
3. AGENCY: admissions of rulings of the court in excluding evidence
agent. of the admissions of Purcell made after the
writ of attachment in this case had been issued and
levied. We think there was no error in the rulings in

question. The evidence submitted by the defendant showed without conflict that the authority of Purcell was restricted in this case ; that he did not have his usual powers, for the reason that plaintiffs regarded it as a matter of much importance, and were acting in their own behalf. It is said that while the declarations of the agent were made after the levy, yet his instructions were given before, and his declarations would have shown his instructions, and indirectly the real feeling which induced plaintiffs to sue out the writ. But there was no sufficient foundation for admitting the declarations in evidence. Purcell was shown to have but limited powers to settle with defendant, and the declarations were not shown to be within the scope of his authority.

IV. It appears that defendant was absent from Tabor from the Tuesday preceding the attachment until 4. EVIDENCE: Sunday, the day next following that of the uncertain tendency of: attachment, and that he left witnesses Green exclusion. and Piper in charge of his business. The appellant complains of the refusal of the court to allow these witnesses to testify as to the instructions which defendant gave them in regard to his business, before leaving. The record fails to disclose what the excluded testimony would tend to prove, and for that reason the ruling was correct. *Kuhn v. Gustafson*, 73 Iowa, 637.

The witnesses were permitted to show how 5. ATTACHMENT: fraudulent they conducted the business during defend-disposition of property : ant's absence. The proposed evidence was counter-claim: evi-dence. offered by defendant to establish his case in the first instance, and was not rebutting. It was designed, as now claimed, to show that defendant was not disposing of his property with fraudulent intent, but we do not think it was competent for him to show that intent by secret instructions, given only to his employes.

V. Appellant complains of the refusal of the court to allow him to prove the value of the land attached

**6. The same: amount of property attached.** in the action in Nebraska against Goodrich & Bagley. It is said the evidence offered would have tended to show, that plaintiffs caused an excessive amount of property to be attached, and, therefore, that the suing out of the writ was malicious. The land in question belonged to Goodrich. It was attached several days after the writ in this case was issued and served. It was not proposed to show that the levy was on more property than the writ authorized, nor that plaintiffs gave any directions as to the property upon which the levies should be made. As already mentioned, the writ in this case, and the writ in the Nebraska case against Bagley alone, were served at substantially the same time. Under these circumstances, we do not think there was anything in the rejected evidence which would have tended to show that the writ in this case was sued out maliciously or wrongfully.

VI. Lucius Wells testified as a witness for the plaintiff. He was asked what information came to him prior to suing out the writ in regard to the **7. Evidence: practice: contradicting one's own witness.** rating of defendant in the commercial agency. The question was objected to by defendant, but the objection was overruled. The witness then commenced to answer the question, but before it was completed he was interrupted, and the record does not show that the answer was finished. On cross-examination, the witness testified that, in a printed book issued by a commercial agency, he had noticed that the rating of defendant at Tabor had been withdrawn. Saturday afternoon it was agreed between the parties to the action that the evidence was closed, and that the witnesses might be discharged. On the next Monday morning, when court convened, defendant asked permission to examine as a witness an employe of the commercial agency referred to by Wells, to show that in the book of said agency for January, 1886, there was no rating for defendant on his Tabor business, and that in its book for July, 1886, he was noted as of fair credit.

The permission asked was refused, and we think the ruling was correct. Wells did not state whether the book he examined was for January or July of 1886. The evidence of Wells which defendant proposed to rebut was in fact called out by him on cross-examination, and was, therefore, his own evidence. It was not proposed to introduce the books, but, so far as the record shows, merely to prove their contents. The action of the court would have been right, even though there had been no agreement as to the closing of the evidence.

8. ——: contents of books: parol.

VII. Appellant urges many objections to rulings of the court in admitting evidence as to his business transactions and declarations, both before and after the suing out of the attachment in this case. It may be true, as claimed by him, that none of these declarations and acts, considered alone, showed that he was about to dispose of his property with fraudulent intent when the writ was procured, but all plaintiffs required to justify the procuring of the writ was that defendant was in fact about to dispose of his property with the intent stated, or that they had reasonable ground for believing that such was the fact, and the burden was on defendant to show that neither of the conditions suggested really existed. To rebut the claims and evidence of defendant, it was proper for plaintiffs to show such statements and transactions of defendant as, considered together, would tend to justify their course in suing out the writ. It was proper to show facts which, though unknown to plaintiffs at the time, tended to show that defendant was preparing to make a fraudulent disposition of his property. It was also proper to show such facts and circumstances within the knowledge of plaintiffs as gave them reasonable grounds for believing that the ground upon which they sued out the writ was true. In either case the material facts may be established by fair inference from many facts duly proven. *Harwick v. Weddington*, 73 Iowa, 302.

9. ATTACHMENT: wrongful suing out: evidence.

It is not necessary that the information upon which the creditor acts in suing out the writ be true, if he acts in good faith, and with reasonable care; nor is it necessary that he should act only upon such information as would be competent evidence in court. In this case a part of the information upon which plaintiffs acted was sent to them by telegraph. The telegrams were received by the telegraph company at its office in Council Bluffs, and thence transmitted to the office of plaintiffs by telephone. The person who received them at the last-named office reduced them to writing, and in that form they were handed to and acted upon by plaintiffs. The dispatches, as thus preserved, were admitted in evidence against the objection of defendant. They were properly admitted, as showing in part the information upon which plaintiffs acted in suing out the writ. As reasonably prudent men, they were not required to verify the dispatches by comparing them with the originals on file with the telegraph company before acting. We think there was no prejudicial error in the admission of evidence.

VIII. Appellant places stress upon the fact that the petition was verified July 14, 1886, while it was not

10. The same.    filed, nor was the writ issued, until three days later. We do not think that fact indicates anything against the good faith of plaintiffs. The evidence shows that on the date first named they had received information which caused them to believe that the ground of attachment stated in the petition existed, but they caused the petition to be withheld from the files for three days, and during that time they were seeking further information as to the business and intent of defendant. The petition became effectual when it was filed, and not when it was verified.

IX. Many alleged errors in giving and refusing to give instructions are discussed by counsel. We think the charge as given quite full, and that it fairly submitted the case to the jury. The evidence was sufficient to sustain the verdict and special findings, and

we are of the opinion that the judgment should not be disturbed.

X. The abstracts and arguments are unusually voluminous, the assignment of errors covering eighteen pages. We should not be justified in making special mention of each ruling assigned as error. Many of them are governed by rules we have already announced. Some relate to the measure of damages, and are immaterial, in view of the verdict and findings of the jury. Others are unimportant, or of no general interest. We have called special attention to the most material questions discussed by counsel, and do not feel authorized to do more. The judgment of the district court is

AFFIRMED.