LORD, OWEN & COMPANY, Appellant, v. HARRY L. WOOD, Appellee.

Attachment:  OBJECTION TO SALE:  DAMAGES:  ESTOPPEL.  After
1   levy of attachment, the sheriff summoned a jury to determine the danger of depreciation in value of the attached goods, before whom defendant appeared and protested against a sale. *Held*, defendant was not estopped by such appearance from claiming damages for a wrongful attachment after such protest.

Wrongful Attachment:  STATEMENT OF CREDITOR:  EVIDENCE.
2   Where a wrongful attachment is an issue and malice is alleged, a conversation with the creditor at the time the debt was incurred regarding the date of payment is admissible.

Evidence:    STATEMENTS OF ATTORNEY'S CLERK:    ADMISSIBILITY OF.
3    The statement of a clerk employed in an attorney's office,
who has actual charge of the collection of the account and
who authorizes the attachment, which is subsequently ap-
proved by the attorney, relating to the grounds of the attach-
ment, is admissible against the client in a suit for wrongful
issuance and levy of the writ.

Wrongful Attachment:    INSTRUCTION.    On an issue for wrongful
4    attachment, an instruction that if the jury find that plaintiff
''did not believe or had no reasonable ground for believing''
that defendant was about to wrongfully dispose of his prop
erty, the attachment was wrongful, and a recovery may be
had, is error, as it ignores the fact that defendant must also
prove that the ground of the attachment was in fact untrue.

Measure of Damages:    INSTRUCTION.    In case of a wrongful at-
5    tachment, the rent of a building for which defendant was
liable and in which he was conducting his business at the
·time of the attachment, and the value of defendant's time
in the particular business in which he was engaged are proper
elements of damage, and an instruction not in accordance here-
with is error.

*Appeal from Wright District Court.*—HON. J. R. WHITAKER,
Judge.

TUESDAY, MAY 12, 1903.

ACTION by plaintiff, a copartnership, aided by an at-
tachment, on an account for merchandise sold and delivered
to defendant.    The answer admits the account sued upon,
and in a separate count sets up a counterclaim, based on
the attachment bond, for damages alleged to have been
caused by the wrongful suing out of the writ.    A jury
trial was had, resulting in a verdict in favor of defendant.
Judgment was rendered on the verdict, and plaintiff ap-
peals.—*Reversed.*

*Birdsall & Birdsall* for appellant.

*Filkins & Schaffter* for appellee.

BISHOP, C. J.—At the time in question appellee was a
retail druggist doing business at Woolstock, Wright county.

The attachment writ was levied upon his stock of goods, and the sheriff took possession of the store. This occurred January 17, 1901. After the counterclaim, which included an item of damages for depreciation in value and injury to the stock, was filed, and on February 20, 1901, the plaintiff applied to the sheriff for an order for the sale of the attached property in accordance with the provisions of chapter 101, Acts 27th General Assembly. Pursuant thereto the sheriff summoned a jury, which met and examined the stock and returned a finding to the effect that it was not necessary to dispose of the stock. The defendant appeared before such jury and protested against a finding in favor of a sale. Thereafter the plaintiff filed a reply in which was pleaded such action on the part of defendant, and alleging that he became thereby estopped from claiming damages for any further depreciation in the value of the stock of goods. To such reply the defendant file1 a demurrer, based upon the ground that the facts as pleaded are not sufficient to constitute an estoppel, and this was sustained. During the progress of the trial the plaintiff offered in evidence the affidavit and notice to defendant, pursuant to which the sheriff's jury was impaneled; also the written finding of such jury. These were objected to as incompetent and immaterial and the objection was sustained. Errors are assigned upon the ruling sustaining the demurrer and sustaining the objection to the evidence offered, and such rulings may be considered together.

The provisions of the statute referred to in substance are that when the plaintiff makes affidavit that the attached goods are in danger of serious and immediate waste 1. OBJECTION to sale, damages; estoppel. and decay or that the keeping thereof will necessarily be attended with such expense as greatly to depreciate their value, the sheriff may summon a jury to examine the same, and shall give notice to de-

fendant, who may appear and have a personal hearing. If the jury are of the opinion that the property should soon be disposed of, they shall specify a day beyond which the same should not be kept, etc. As we have seen, the defendant in this case did appear and protested against a finding in favor of a sale. But we cannot agree that by such conduct he became estopped from making claim for damage growing out of a depreciation in the value of the goods thereafter occurring. His attitude from the beginning had been one of protest because of the alleged wrongful seizure of his stock. His appearance before the sheriff's jury amounted to nothing more than a continuation of his protest. On the other hand, if the issuance of the writ of attachment and the levy thereof were wrongful, the plaintiff cannot complain if it be held responsible for all natural and proximate damages resulting therefrom. Certainly it might shield itself behind a consent given by the defendant, but no reason occurs to us for holding that it could with like result take refuge behind an express and emphatic protest. Nor can it be said, as contended for by counsel for appellant, that by his protest the defendant prevented a sale of the goods, which being had, would have cut off any farther waste or deterioration, and therefore the plea of estoppel should be upheld. The grounds of the protest made do not appear, but, considering the attitude of defendant, it is fair to presume that he was objecting to the interference with his business and a summary disposition of his property at forced sale. Moreover, the conclusion that the finding of the jury was influenced by the protest is unwarranted. The province of the jury was confined to a determination of the question whether an immediate sale was required in view of the character and condition of the property. Upon this question the jury might consider evidence offered and hear arguments, but the protest made could have no bearing. So too, it is not contended that the plaintiff changed its

position, or otherwise acted dterimentally to its own interest, by reason of the conduct of defendant as alleged, and there can be no estoppel where such is not made to appear. *Morris v. Sargent*, 18 Iowa, 90; *Tufts v. Mc-Clure*, 40 Iowa, 317.

II.    The defendant and his mother were permitted to testify, over the objection of plaintiff, to a conversation had with one member of the plaintiff firm on the date

2. WRONGFUL ATTACHMENT:· STATEMENT OF CREDITOR: EVIDENCE.

when the account in question was first opened upon the subject of the time within which defendant would be expected to pay for goods thereafter purchased by him on credit.    In this there was no error.    Malice was, alleged in the pleading filed by defendant, and all matters directly connected with the conduct of the business transactions had between them was relevant to the issue thus tendered.

Complaint is also made, based upon the admission in evidence of certain declarations made by one A. G. Wambach.    These had relation to the grounds for the attach-

3. EVIDENCE: STATEMENTS OF ATTORNEY'S CLERK: ADMISSIBILITY OF.

ment.    It appears that the plaintiff firm was a resident of Chicago.    It sent the claim here in suit to George Wambach, an attorney at Webster City, this state.    At the time such claim arrived, George Wambach was absent from home, his office being in charge of his son A. G. Wambach.    The latter was not an attorney, but he took charge of the claim, and went to Woolstock several times making efforts to collect it.    He caused the petition for attachment to be prepared by another attorney, and furnished the information upon which the allegations thereof were based.    Upon the return of the father, the facts were laid before him by his son, and thereupon the petition was filed, and the writ caused to issue.    In one connection the said George Wambach swears that in so doing he acted upon the information furnished by his son, who was connected with him in business, and who acted as agent for plaintiff in the mat-

ter of suing out such attachment. In view of the facts
thus appearing, we are clearly of the opinion that what
was said and done by A. G. Wambach was competent and
material as bearing upon the question of the existence of
grounds for the attachment, and the belief of plaintiff
with respect thereto. Plaintiff does not repudiate the
attachment as unauthorized, and A. G. Wambach, the
clerk or associate of his father in business, alone acted in
the premises up to the time of filing the petition. The
case is unlike that presented in *Antrobus v. Sherman*, 65
Iowa, 230, cited and relied upon by appellant. There the
attorney holding a claim for collection, without the
knowledge or consent of his client, sent such claim to a
firm of attorneys in another county, and it was held that
the client was not liable for the acts of the latter. Here
the business was transacted from the office to which the
claim was sent, and by one regularly employed in such
office. Clients cannot, in reason, expect that every act in
connection with the business affairs intrusted by them to
an attorney will be done by him personally. In the very
nature of things, much of the detail work must be done
by assistants under the supervision of such attorney. To
say that for the particular acts done by such an assistant
the client is under no responsibility, might lead to the
gravest abuses. It is our conclusion that there was no
error in the rulings complained of.

III. The court gave to the jury an instruction as fol-
lows: "So, if you find by the preponderance of the evi-
dence that at the time the plaintiffs sued out said writ of
4. WRONGFUL    attachment against the defendant, they did
   attachment:
   instruction.   not believe, or had no reasonable grounds for
believing, that the said defendant was about to dispose of
his property with intent to defraud his creditors, then the
suing out of the attachment would be wrongful, and the
plaintiff is liable to the defendant on his counterclaim for
actual damages sustained." The giving of such instruc-

tion was error.    The allegation of the petition is that "the
defendant is about to dispose of his property with intent
to defraud his creditors."   If that allegation be true in
point of fact, or if the plaintiff have reasonable grounds
for believing the fact to be true as alleged, there can be
no recovery of damages on account of the issuance of the
attachment, as the same would not be wrongful.  *Vorse v.
Phillips*, 37 Iowa, 428; *Deere v.  Bagley*, 80 Iowa, 205;
*McCormick H. M. Co. v. Colliver*, 75 Iowa, 559.   In the
case last cited an instruction similar to the one given in
the case before us was under consideration, and the court
said:   "The burden of proof is on the one alleging the
wrongfulness of the act of suing out of the writ, and to
establish his allegation he must prove not only that the
party who caused it to be issued had no reasonable grounds
for believing that the allegations upon which it was issued
were true, but that they were not true in fact.    Under
the instruction in question defendant was allowed to re-
cover on proof of but one of these states of fact."  We are
not able to agree that, in view of the other instructions
given, the one in question could not have been prejudicial.
It is very easy to see that the jury may have taken it as
their guide in arriving at a conclusion.

IV.    The giving of the thirteenth instruction is as-
signed as error.   It is as follows:   "Such actual damages
would be  the damages, if any, shown by the evidence to
the property levied upon while in the hands
of the said sheriff, and up to the present
time; the rent of the building in which said property is
located from the time said levy was made and possession
taken by the sheriff up to the present time, at the agreed
rental price to be paid for the same, provided you find
that the defendant is liable to the owner of said building
for the rent of the same during said time; and the reason-
able wages or value of his time that the defendant
has lost during the time that the sheriff has said

5. MEASURE of
damages:
instruction.

property in his possession, up to the present time, and by reason of the defendant not being able to obtain other employment, if the evidence shows such facts." The instruction is correct as far as the same has relation to the question of rent of the store building. Actual damages are intended to be compensatory only, and, if the defendant be made whole, whether the amount of his damage be much or little, he must and can well be satisfied. On the other hand, the plaintiff, in suing out the attachment and giving the bond, in effect agrees that he will respond by payment of all actual damages in point of fact sustained by defendant, in case it shall be held that the issuance and levy of the writ was wrongful. We are of the opinion, however, that the instruction is wrong in so far as it relates to the time alleged to have been lost by defendant. It seems to us that, if plaintiff is liable at all, the measure of damages for loss of time must be limited to the value of his time in the particular business in which he was engaged. Such damages cannot be measured by what he might have earned by working for some one else, or at some other place. The question is not what he was capable of earning, but what has he lost?

Other errors assigned will not be likely to arise upon a retrial, and for that reason need not be discussed. For the errors pointed out, the judgment must be and it is REVERSED.